IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


KENT SMITH,                          :        CIVIL NO. 1:04-CV-0997
                                     :
          **Plaintiff**              :
                                     :
     **v.**                          :
                                     :
**DEPARTMENT OF GENERAL**            :
**SERVICES; PENNSYLVANIA**           :
**CAPITOL POLICE BUREAU, a/k/a**     :
**CAPITOL POLICE DEPARTMENT**        :
**AT HARRISBURG; EUGENE V.**         :
**MARZULLO, Chief Of Police;**       :
**RICHARD SHAFFER; and**             :
**SERGEANT MICHAEL SHIPP,**          :
**individually and in his capacity as a**  :
**Capitol Police Officer,**          :
                                     :
          **Defendants**             :
                                     :

# M E M O R A N D U M

Before the court is Defendants Shipp, Marzullo, and Shaffer's ("the

Individual Defendants") motion for summary judgment.  (Doc. 23.)  Plaintiff brought

suit against all of the defendants under 42 U.S.C. § 1983 as well as various state-law

claims against Defendant Shipp.  The defendants filed a motion to dismiss, which the

court granted in part and denied in part.  The court dismissed Plaintiff's § 1983

claims against the Department of General Services and the Pennsylvania Capitol

Police Bureau a/k/a Capitol Police Department at Harrisburg ("the Capitol Police") as

well as against the Individual Defendants in their official capacities.  Plaintiff's § 1983

claims against the Individual Defendants in their individual capacities and Plaintiff's state-law claims against Defendant Shipp survived the motion to dismiss and are the only claims remaining in the case.

The Individual Defendants now argue that there are no genuine issues of material fact with respect to Plaintiff's § 1983 claims and that they are entitled to judgment as a matter of law.  In the alternative, the Individual Defendants assert that they are entitled to qualified immunity from suit.  The Individual Defendants also urge the court to decline to exercise jurisdiction on Plaintiff's remaining state-law claims.  For the reasons set forth below, the court is persuaded that the Individual Defendants are entitled to judgment as a matter of law on Plaintiff's § 1983 claims.  Additionally, the court will dismiss Plaintiff's remaining state-law claims.  Thus, the court will grant the Individual Defendants' summary judgment motion and dismiss the case in its entirety.

## I.  **Background**

### A.  **Factual Background**

The following facts are undisputed except where noted.[1]  Plaintiff Kent Smith ("Plaintiff" or "Mr. Smith") was employed as a police officer with the Capitol

---

[1]At the outset, the court notes that many of the paragraphs in Plaintiff's Counterstatement of Material Facts do not comply with Middle District of Pennsylvania Local Rule 56.1.  Local Rule 56.1 provides that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."  Many of Plaintiff's paragraphs do not cite to the record, and many of the paragraphs that contain citations only cite generally to an entire deposition.  The court has made every effort to rely on paragraphs that provide citations or to rely directly on the record, but to the extent the court has been unable to do so, the court has deemed the fact in question to be admitted.  *See* Middle District of Pennsylvania Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

Police beginning in July 2002.  (Defs.' Statement of Material Facts ¶ 6.)  Defendant

Michael Shipp has been employed by the Capitol Police since 1976 and held the rank

of sergeant at the time of the events in question, which was a supervisory position.[2]

(*Id*. ¶ 5.)  Defendant Eugene Marzullo was the Director of the Capitol Police from

April 1995 until his retirement in January 2004.  (*Id*. ¶ 3.)  Defendant Richard Shaffer

began his employment with the Capitol Police on November 3, 2004 and replaced

Mr. Marzullo as Director in January 2004.  (*Id*. ¶ 4.)

### 1.   <u>The Incident</u>

On December 10, 2003 around 2:40 p.m., Mr. Smith was in the

administrative office waiting to talk to the time clerk, Linda Ferko, before his shift

started for the day.  (*Id*. ¶ 7.)  Mr. Smith was in civilian clothes at the time.  (Pl.'s

Counterstatement of Material Facts ¶ 43.)  Although Mr. Smith was in the

administrative office that day to seek assistance with a "time issue," he was "up there

every day talking to the girls" before the start of his shift.  (Smith Dep. at 12 *ll*.2-9.)

Mr. Smith was standing outside Ms. Ferko's doorway, leaning with his left shoulder

against the wall and one foot on the ground.  (*Id*. at 14 *ll*.1-2, 15 *ll*.7-10.)  Sgt. Shipp,

who was taking time records to Ms. Ferko at the end of his shift, approached Mr.

Smith from behind, grabbed his right arm, and stated, "You've been up here long

enough, come on."  (Defs.' Statement of Material Facts ¶¶ 8, 10; Ex. E in Supp. of

Defs.' Statement of Material Facts, Smith Statement.)  Mr. Smith went forward and

then spun around and ripped his arm out of Sgt. Shipp's hand.  (Smith Dep. at 14

*ll*.4-7.)

---

[2]Plaintiff alleges that Sgt. Shipp was not Plaintiff's supervisor at any time; however, this allegation is not supported by a proper citation to the record.

### 2.    The Contact

Mr. Smith believed that Sgt. Shipp was hitting and shoving him when Sgt. Shipp grabbed his arm.  (Smith Dep. at 38-39; Pl.'s Counterstatement of Material Facts ¶ 46.)  In his deposition, Mr. Smith also described the incident as follows:

> Q: Did he push you, shove you?
> A: It happened that quick.  I know I went forward.  I reacted dumbfounded, went forward, and spun around and ripped my arm out of his hands.

(Smith Dep. at 14 *ll*.3-7.)  Finally, Mr. Smith asserts that Sgt. Shipp "screamed at [him] like [he] was a dog."  (*Id*. at 11 *l*.13.)  Mr. Smith concedes, however, that Sgt. Shipp did not arrest him or detain him.  (*Id*. at 41 *ll*.16-19.)[3]

For his part, Sgt. Shipp describes the physical contact as follows: "I placed my right hand on his right inner elbow, grasped it, cupped it, so to speak." (Shipp Dep. at 13 *ll*.11-13.)  Sgt. Shipp also explained that he "put pressure on [Mr. Smith's] inner elbow."  (*Id*. at 15 *ll*.11-12.)  Sgt. Shipp admitted that he was aware of a department policy prohibiting supervisors from having any physical contact with employees, but asserted that he did not believe his interaction with Mr. Smith involved "physical contact" because there was no use of force.  (Pl.'s Counterstatement of Material Facts ¶ 45.)  Nonetheless, Sgt. Shipp alleges that he told Mr. Smith to move along because the supervisors had been informed that officers were hanging around the administrative offices and distracting secretaries from their job duties.  (Defs.' Statement of Material Facts ¶ 12.)

---

[3]Mr. Smith alleges that "[w]hen Sergeant Shipp forcefully grabbed and held onto Plaintiff, the Sergeant was in full uniform, wearing a badge and gun, on duty as a police sergeant."  (Pl.'s Counterstatement of Material Facts ¶¶ 10, 42.)  Mr. Smith, however, does not provide support for this allegation; thus, the court is unable to rely on the statement.

### 3.   Events Following the Incident

Following the incident, Mr. Smith left the administrative offices to change his clothes and get to his post.  (Smith Dep. at 19 *ll*.3-5.)  His shift started at 3:00 p.m.  (*Id.* at 19 *ll*.9-10.)  Three hours later, Mr. Smith reported the incident to his supervisor, Sgt. Dave Anthony, because his arm had started hurting.  (*Id.* at 19 *ll*.12-18.)  Sgt. Anthony told Mr. Smith to get his arm checked and to put together a written statement, which Mr. Smith did.  (Defs.' Statement of Material Facts ¶ 15.)  A patrolman drove Mr. Smith to Harrisburg Hospital where he was examined by a doctor.  (*Id.* ¶ 16.)  The doctor believed that Mr. Smith sprained a muscle and referred him to a specialist.  (*Id.* ¶ 17.)  Mr. Smith did not receive an X-Ray or pain medication at Harrisburg Hospital.  (*Id.* ¶ 17.)  Later, the specialist diagnosed Mr. Smith with right shoulder infraspinatus tendonitis and prescribed painkillers and rest.  (*Id.* ¶ 18; Pl.'s Counterstatement of Material Facts ¶ 52.)  After taking a couple of days off work to rest, Mr. Smith returned to work on full-duty status on December 16, 2004.  (Defs.' Statement of Material Facts ¶ 18; Smith Dep. at 25 *ll*.18-23.)

About three months later, Mr. Smith returned to the specialist "[t]o get rid of the pain," which had continued to hurt like a toothache.  (Smith Dep. at 27 *ll*.3-7.)  Mr. Smith received a steroid shot in his shoulder.  (*Id.* at 27 *ll*.12-15.)  Since the shot, he has not had pain, and he has not had to take prescription medication.[4]  (*Id.* at 27 *ll*.18-20, 30 *ll*.14-21.)  Mr. Smith was told that he could return to work full-time,

---

[4]Mr. Smith alleges that he received physical therapy and cites to a Keystone Health Plan letter dated April 26, 2005 as support.  (Pl.'s Counterstatement of Material Facts ¶ 55.)  The Keystone Health Plan letter, however, only refers to Mr. Smith's benefit coverage for physical therapy, stating that he was approved to receive physical therapy.  (*See* Ex. 13 in Supp. of Pl.'s Counterstatement of Material Facts, April 26, 2005 Letter.)  In his deposition, Mr. Smith testified that he never received physical therapy.  (Smith Dep. at 31 *l*.25 to 32 *ll*.1-2.)

but to avoid repetitive lifting of more than five pounds.  (*Id.* at 28 *ll.*6-8.)  At some

point, however, he was placed on light-duty at the instruction of the Capitol Police.

(*Id.* at 28 *ll.*13-19.)

In or around April 2004, Mr. Smith requested a transfer to a different

shift.[5]  (Defs.' Statement of Material Facts ¶ 40.)  In transferring shifts, Mr. Smith

took a $1.00 per hour pay cut.[6]  (*Id.* ¶ 41; Pl.'s Counterstatement of Material Facts ¶

39.)

### 4.    <u>Disciplinary Proceedings</u>

As a result of Mr. Smith's written complaint, a sergeant named Timothy

Driscoll initiated an investigation into the incident.  (Defs.' Statement of Material

Facts ¶ 21.)  As part of his investigation, Sgt. Driscoll found that none of the

witnesses to the incident could confirm or deny Mr. Smith's allegations.  (Ex. 6 in

Supp. of Pl.'s Counterstatement of Material Facts, Driscoll Report at 1.)  A

predisciplinary conference was held to consider the matter, but ultimately, Sgt. Shipp

did not receive any formal disciplinary action.  (Defs.' Statement of Material Facts ¶

23.)  At some point, Director Shaffer, who had taken over as director for Mr.

Marzullo by this time, counseled Sgt. Shipp to not grab another patrol officer's arm.

(*Id.*)

---

[5]Defendants allege that Mr. Smith requested a transfer from the midnight shift to the 3-11 shift.
(Defs.' Statement of Material Facts ¶ 40.)  The email in which Mr. Smith sought the transfer, however, asks for
a transfer to the 10-6 shift.  (*See* Exs. K, L in Supp. of Defs.' Statement of Material Facts.)  Regardless, Mr.
Smith admits that he requested a transfer (Pl.'s Counterstatement of Material Facts ¶ 38); the change in shift
time is irrelevant.

[6]Defendants assert that Mr. Smith did not receive a reduction in rank as a result of the transfer, but
they do not provide any citation to the record to support this allegation.  (*See* Defs.' Statement of Material
Facts ¶ 42.)  Mr. Smith asserts that he received "a reduction in pay rank," but the citations he provides do not
support this allegation.  (*See* Pl.'s Counterstatement of Material Facts ¶ 40.)

At Sgt. Shipp's predisciplinary conference with Sgt. Driscoll, Sgt. Shipp indicated that Mr. Smith made false statements in his written complaint in the way that he described the incident.  (*Id*. ¶ 24.)  Sgt. Driscoll followed up with Mr. Smith regarding this allegation, and eventually Mr. Smith received notice that a predisciplinary conference was going to be held on the matter.  (*Id*. ¶¶ 24-26.)  The letter notifying Mr. Smith of the conference stated that an investigation was being conducted related to the charge of Providing False and Misleading Information.  (Ex. G in Supp. of Defs.' Statement of Material Facts, Predisciplinary Conference Letter.)[7]  Following the conference, Director Shaffer sent Mr. Smith a letter stating that the allegations against him could not be supported.  (Ex. I in Supp. of Defs.' Statement of Material Facts, Shaffer Letter.)  No disciplinary action was taken as a result of the predisciplinary conference, and no criminal complaint was ever filed against Mr. Smith.  (Defs.' Statement of Material Facts ¶ 29.)

### 5.   Sgt. Shipp's Previous Incidents

Sgt. Shipp received one other predisciplinary conference over his career prior to the one he received with respect to the incident with Mr. Smith.  (*Id*. ¶ 34.)  The conference related to transporting an officer without clearing it through the communications center, and he received a letter of reprimand.  (*Id*.)  Sgt. Shipp is unaware of any other formal workplace complaints filed against him.  (*Id*. ¶ 35.)

A subordinate female officer filed two complaints with the Equal Employment Opportunity Commission against Sgt. Shipp.  (*Id*. ¶ 36.)  The first was

---

[7]Mr. Smith alleges that Sgt. Driscoll told him that he was being investigated for the criminal charge of making false statements.  (*See* Pl.'s Counterstatement of Material Facts ¶ 23.)  However, Mr. Smith does not provide a proper citation to Mr. Smith's deposition, and Mr. Smith's citation to the letter notifying him of the predisciplinary conference does not make reference to Mr. Smith being charged with a crime.  (*Id*.; Ex. G in Supp. of Defs.' Statement of Material Facts, Predisciplinary Conference Letter.)

because he would not grant her leave without a doctor's note. (*Id*.) The second was for harassment because Sgt. Shipp called the employee at home to find out about her leave records. (*Id*.)

Another officer, Sam Sloan, filed a complaint that Sgt. Shipp hit and damaged a locker. (*Id*. ¶ 37.) Mr. Sloan asserted that Sgt. Shipp entered the men's locker room, appeared to be "very enraged and possessed a 1,000 mile stare," and hit a locker with his open hand, causing damage to the locker. (Ex. 8 in Supp. of Pl.'s Counterstatement of Material Facts, Sloan Statement.) Sgt. Shipp alleges that he was informally questioned about the incident by Director Shaffer. (Defs.' Statement of Material Facts ¶ 37.) Sgt. Shipp told Director Shaffer that everyone smacked the locker as they walked into the restroom. (*Id*.)

Another incident raised by the parties involved an employee named Nicole Fair. (*Id*. ¶ 38.) Sgt. Shipp was her supervisor, and she allegedly lied to him about her knowledge of a knife that was confiscated at her checkpoint. (*Id*.) She was terminated as a result. (*Id*.)

Finally, Sgt. Shipp alleges that he has received numerous trainings over his career regarding the policies and procedures of the Capitol Police, including training as a supervisor. (*Id*. ¶ 39.) Mr. Smith offers a general denial to this statement, but does not support the denial with any citation to the record. (Pl.'s Counterstatement of Material Facts ¶ 37.)

Mr. Smith submits two affidavits from officers with the Capitol Police regarding Sgt. Shipp's alleged anger management problems. (Ex. 1 in Supp. of Pl.'s Counterstatement of Material Facts.) The first is from Charlotte Brodie, an officer with the Capitol Police, who asserts that Sgt. Shipp was known for bullying and

intimidating junior officers.  (*Id*., Brodie Aff. ¶ 6.)  Ms. Brodie also alleges that the "chain of command knew about and minimized or ignored complaints about Shipp degrading junior officers."  (*Id*., Brodie Aff. ¶ 9.)  The second affidavit is from Gladys Oaks, another officer with the Capitol Police, who asserts that Sgt. Shipp threw temper tantrums and would scream at her within an inch or so of her face.  (*Id*., Oaks Aff. ¶ 8.)  Ms. Oaks contends that she reported this conduct, but was told that nothing could be done.  (*Id*.)

### 6.   <u>Alleged Retaliation</u>

Mr. Smith alleges that he was retaliated against by various members of the Capitol Police.  (*Id*. ¶ 30.)  For instance, Mr. Smith believes that Director Shaffer retaliated against him by accusing him of lying during his predisciplinary conference.  (*Id*. ¶ 31.)  Mr. Smith alleges that Sgt. Gino Santamaria, who was also the Fraternal Order of Police union president, removed Mr. Smith as a Lodge union representative and as a member of the election committee.  (*Id*. ¶ 30; Ex. J in Supp. of Defs.' Statement of Material Facts, Santamaria Letter to Smith.)  Mr. Smith also asserts that other officers put cheese in his mailbox with the implication being that he "ratted out" Sgt. Shipp.  (Pl.'s Counterstatement of Material Facts ¶ 61.)  Other officers allegedly taunted Mr. Smith and would call him a "snitch."  (*Id*. ¶ 62.)  Mr. Smith alleges that Sgt. Shipp participated in the taunting and called him a "snitch" to his face, but his citations to the record do not support this allegation.  (*See id*. ¶¶ 62, 73; Smith Dep. at 77-78.)  In fact, the deposition cited specifically states that Sgt. Shipp did not make taunts or other harassing comments to Mr. Smith.[8]  (Smith Dep. at 77 *ll*.17-24

---

[8]Mr. Smith testified as follows:

(continued...)

to 78 *ll*.1-5.)  Regardless, Sgt. Shipp admitted sarcastically saying to other officers, "Don't touch me or I'll sue you."  (Pl.'s Counterstatement of Material Facts ¶ 63.)

Mr. Smith tried to file complaints with the workplace violence coordinator, Dianne McNeal, but she told him that another administrator, Chuck Hodge, had taken over his case.  (*Id*. ¶ 64.)  When Mr. Smith followed up with Mr. Hodge, he was told that he could not file any complaints.  (*Id*. ¶ 65.)  Mr. Hodge allegedly told him, "You filed a lawsuit, live with it."  (Smith Dep. at 81 *l*.15.)

### 7.   **Mr. Smith's Psychological Status**

In or around December 2004, Mr. Smith went to see a mental health professional as a result of the alleged harassment he was experiencing.  (Pl.'s Counterstatement of Material Facts ¶ 57; Smith Dep. at 33-34.)  Mr. Smith alleges that he became "short with people" and that his wife was "embarrassed to be with [him]" due to his poor mental health.  (Pl.'s Counterstatement of Material Facts ¶ 58; Smith Dep. at 39 *ll*.24-25, 40 *ll*.2-3.)  In March 2005, Director Shaffer notified Mr. Smith that the Department of General Services, the agency that oversees the Capitol Police, was concerned about whether Mr. Smith could safely perform his duties as an officer because of medications he was taking.  (Ex. 2 in Supp. of Pl.'s

---

[8](...continued)
Q: You say there were taunts and other harassment by defendants.  Tell me about taunts and harassments by Shipp.
A: From Shipp?
Q: Yes.
A: See, my witnesses are going to have to testify to that.
Q: Do you have any personal knowledge?
A: They were telling me it was going on.
Q: But was anything said to you by Shipp?
A: Not by Shipp, no.

(Smith Dep. at 77 *ll*.17-24 to 78 *ll*.1-5.)

Counterstatement of Material Facts, Shaffer Letter.)  Consequently, Director Shaffer asked Mr. Smith to provide written documentation from his physician stating that he was able to safely perform the duties of a Capitol Police officer.  (*Id.*)  In a letter dated April 13, 2005, Sheilah Yohn, a Family Nurse Practitioner with Family Health Associates, wrote that "[i]n my opinion, because of his emotional and mental state and the continued unhealthy environment, officer Smith can no longer work safely as an officer of the Pennsylvania Capitol Police Department."  (Ex. 3 in Supp. of Pl.'s Counterstatement of Material Facts, Yohn Letter.)  On February 22, 2005, a licensed clinical psychologist named Louis B. Laguna, PhD, performed a psychological evaluation of Mr. Smith at the request of his attorney.  (Ex. 4 in Supp. of Pl.'s Counterstatement of Material Facts, Laguna Eval. at 1.)  Mr. Laguna concluded that "Mr. Smith is currently suffering from an actual mental/emotional injury in the form of stress and depression, and that it is the direct result of the incident between him and Sergeant Shipp, and the subsequent harassment suffered by Mr. Smith, at the workplace."  (*Id.* at 11.)

### B.   Procedural History

Plaintiff filed suit against the Department of General Services, the Capitol Police, and Sgt. Shipp on April 16, 2004 in the Dauphin County Court of Common Pleas, asserting 42 U.S.C. § 1983 and state-law claims.  Defendants removed the action to this court on May 5, 2004.  Plaintiff then filed an Amended Complaint, adding Director Shaffer and Director Marzullo as defendants.  In his Amended Complaint, Mr. Smith alleged constitutional violations under the First, Fourth, and Fourteenth Amendments.  (Am. Compl. ¶ 29.)  Specifically, Plaintiff asserted that he was "deprived of his right to be free from unreasonable and excessive force, unlawful

search and seizure, unlawful arrest, malicious prosecution, to be secure in his person and property and to due process of law." (*Id.*)  Plaintiff also raised failure to supervise, train, investigate, and discipline claims.[9] (*Id.* ¶ 31.)  Finally, Plaintiff alleges the following state-law claims against Sgt. Shipp: assault, battery, false arrest, malicious prosecution, and intentional infliction of emotional distress. (*Id.* ¶ 35.)

After the filing of Plaintiff's Amended Complaint, Defendants filed a motion to dismiss, which the court granted in part and denied in part.  In its memorandum and order dated October 18, 2004, the court concluded that the Department of General Services, the Capitol Police, and Defendants Shipp, Marzullo, and Shaffer in their official capacities were not "persons" within the meaning of § 1983 and therefore could not be sued under that statute. (Oct. 18, 2004 Mem. at 6-7.)  The court, however, found that suit could be brought under § 1983 against Defendants Shipp, Marzullo, and Shaffer in their individual capacities. (*Id.*)  The court rejected Defendants' argument that Plaintiff's excessive force claims could only be analyzed under the Fourth Amendment in accordance with *Graham v. Connor*, 490 U.S. 386 (1989).  The court determined that Plaintiff's excessive force claims were not specifically covered by the Fourth Amendment and thus could be examined under both the Fourth and Fourteenth Amendments. (Oct. 18, 2004 Mem. at 8-10.)  Nonetheless, the court interpreted Plaintiff's Amended Complaint as alleging a claim

---

[9]Plaintiff makes reference to a conspiracy to violate his constitutional rights in his Amended Complaint. (*Id.* ¶¶ 22-27.)  Although he uses the word "conspiracy," the nature of his allegations relate to his claims for failure to train and supervise. (*Id.*)  Additionally, Plaintiff has a section of his Amended Complaint in which he lists the causes of action he is suing under, and he does not mention a conspiracy or the civil rights conspiracy statute, 42 U.S.C. § 1985(3). (*See id.* ¶¶ 28-35.)  Finally, neither party has addressed a conspiracy claim in any of the briefs to the court.  Thus, the court concludes that Plaintiff has not alleged a civil rights conspiracy claim.  Regardless, in light of the court's conclusion that Plaintiff has not demonstrated a genuine issue of material fact on any of his § 1983 claims, a civil rights conspiracy claim would fail as a matter of law.

based on unlawful seizure under the Fourth Amendment only, not the Fourteenth Amendment.  (*Id*. at 9-10.)

In the remaining portion of the memorandum, the court concluded that Plaintiff had stated a claim upon which relief could be granted for his seizure and excessive force claims.  (*Id*. at 11-17.)  The court also found that Plaintiff sufficiently stated a claim upon which relief could be granted as to his malicious prosecution claim.  (*Id*. at 19-20.)  Further, the court determined that Plaintiff's First Amendment retaliation claim involved a matter of public concern.  (*Id*. at 17-19.)  Finally, the court concluded that Sgt. Shipp was not entitled to immunity with respect to Plaintiff's state-law claims against him.  (*Id*. at 20-21.)

Following the court's disposition of Defendants' motion to dismiss, the Individual Defendants filed a motion for summary judgment.  The parties have briefed the issues, and the matter is ripe for disposition.

## II.        **<u>Legal Standard</u>**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  The court must resolve all doubts as to

the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. " 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.**        **Discussion**

The Individual Defendants contend that their motion for summary judgment should be granted for the following reasons. First, the undisputed facts reveal that the Individual Defendants are entitled to judgment as a matter of law on Plaintiff's seizure, excessive use of force, malicious prosecution, unlawful arrest, failure to train, and First Amendment retaliation claims. In the alternative, the

Individual Defendants argue that they are entitled to qualified immunity from suit. Finally, the Individual Defendants assert that the court should decline to exercise jurisdiction over Plaintiff's remaining state-law claims.

For the reasons stated below, the court finds that upon resolving all disputed facts in Plaintiff's favor, the Individual Defendants are entitled to judgment as a matter of law.  In light of this conclusion, the court need not address the Individual Defendants' alternative argument that they are entitled to qualified immunity.  As for the remaining state-law claims, the court finds that these claims should also dismissed from the case as explained in further detail below.

### A.    42 U.S.C. § 1983 Principles

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2002).  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted).  To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000);  *Moore v. Tartler*, 986 F.2d 682,

685 (3d Cir. 1993).  The parties do not dispute that the Individual Defendants were acting under color of state law; therefore, the next step "in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.' "  *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

> **B.**     **Seizure**

The Individual Defendants argue that Plaintiff's allegations do not rise to the level of an illegal seizure under the Fourth Amendment.  The Fourth Amendment grants every citizen the right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  For Fourth Amendment purposes, a "seizure" occurs "when actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.' "  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  A person has been "seized" only when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  The Third Circuit has adopted "a broad approach in considering what constitutes a seizure."  *Gallo v. City of Philadelphia*, 161 F.3d 217, 224 (3d Cir. 1998) (analyzing the concept of a "seizure" in the context of a malicious prosecution claim based on the Fourth Amendment).  For instance, a "seizure" need not involve "a significant deprivation of liberty," but may occur when "restraining an individual's movement to a small area."  *Id*.

As an initial matter, the Individual Defendants ask the court to rely on *Gottlieb v. Laurel Highlands School District*, 272 F.3d 168, 171 (3d Cir. 2001) in

which the Third Circuit held that the Fourth Amendment's prohibition against unreasonable seizures do not apply to a student's allegations of corporal punishment. In so deciding, the Third Circuit concluded that the use of physical force by a teacher in a school setting " 'is a scenario to which the Fourth Amendment does not textually or historically apply.' " *Id*. at 172 (quoting *Kurilla v. Callahan*, 68 F. Supp. 2d 556, 563 (M.D. Pa. 1999)).  The Individual Defendants argue that these principles should be extended to the instant matter because a police officer has a diminished expectation of privacy with respect to his or her superiors in the same way that a student has a diminished expectation of privacy in a school setting.

The court finds this argument unpersuasive.  Public school children are in a " 'unique constitutional position.' " *Kurilla*, 68 F. Supp. 2d at 561 (quoting *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995)).  As the *Kurilla* court explained, "[p]ublic school children are subject to the state's authority in a way that has been described as 'custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults.' " *Kurilla*, 68 F. Supp. 2d at 561 (quoting *Vernonia Sch. Dist. 47 J. v. Acton*, 515 U.S. 646, 655 (1995)).  In other words, because a student's liberty is necessarily curtailed, the Fourth Amendment's focus on the initial deprivation of liberty is not at issue. *Kurilla*, 68 F. Supp. 2d at 561.  Instead, substantive due process principles concerning the conditions of ongoing custody "inform the judicial analysis." *Id*.

Upon review of these legal principles, the court concludes that the instant matter is not analogous to a school setting.  A police officer is not in a unique position such that he or she is subject to a degree of control that differs from other ordinary citizens.  Granted, a police officer must abide by the chain of command, but

an officer still functions as a "free adult."  There is no public policy reason for requiring Mr. Smith to obey his superior under the circumstances of this case.  A student, on the other hand, is necessarily restrained by the supervision of school administrators.  In short, police officers do not experience a curtailment of liberty by virtue of their employment on a police force.  Thus, the court declines to extend the analysis of *Kurilla* to the instant matter.

Notwithstanding this conclusion, the court finds that Sgt. Shipp's conduct toward Mr. Smith did not constitute a "seizure."  In light of the circumstances surrounding the incident between Sgt. Shipp and Mr. Smith, there is no genuine issue that Mr. Smith was not free to leave.  *Mendenhall*, 446 U.S. at 554.  Sgt. Shipp's conduct of grabbing Mr. Smith's arm and screaming at him occurred "that quick."  (Smith Dep. at 14 *l*.4.)  Mr. Smith then "ripped [his] arm out of [Sgt. Shipp's] hands," and left the administrative offices without any resistance.  (*Id*. at 11 *ll*.20-21, 14 *ll*.6-7, 18 *ll*.24-25 to 19 *ll*.1-5.)  Mr. Smith concedes that he was not detained or arrested.  (*Id*. at 41 *ll*.16-19.)  Mr. Smith was not questioned and was not confined to a certain area.  Mr. Smith admits that Sgt. Shipp told him to move along (Ex. E. in Supp. of Defs.' Statement of Material Facts, Smith Statement); thus, it is undisputed that Sgt. Shipp's actions were administrative in nature and were not akin to a police investigatory stop.  Even taking a broad approach of what qualifies as a "seizure," *Gallo*, 161 F.3d at 224, the facts, when resolved in Plaintiff's favor, show that Mr. Smith's movement was not restricted in such a way that his Fourth Amendment liberties were violated.

Two cases from district courts in the Third Circuit lend support to the court's conclusion that Sgt. Shipp's conduct did not amount to a "seizure."  The

first is *Schall v. Vazquez*, 322 F. Supp. 2d 594 (E.D. Pa. 2004).  In *Schall*, the plaintiff was a civilian maintenance worker employed by the Pennsylvania State Police.  *Id.* at 597.  The defendant was an officer who worked for the Pennsylvania State Police in the same barracks.  *Id.*  The parties were friendly with one another and would often engage in horseplay, but one day the police officer grabbed the maintenance worker, put him in a headlock, and held a weapon near his head for a few seconds.  *Id.* at 598.  The maintenance worker did not resist the physical force, but when he was released, he left the area.  *Id.*  Following a bench trial, the Eastern District of Pennsylvania found that the maintenance worker was "seized."  *Id.* at 599. In so deciding, the court concluded that the maintenance worker reasonably believed he was not free to leave.  *Id.*  The court found that the police officer exercised control over the maintenance worker's body and that the maintenance worker submitted to the show of authority.  *Id.*

The second case is *Lloyd v. Jefferson*, 53 F. Supp. 2d 643 (D. Del. 1999).  In *Lloyd*, the plaintiff was present at the scene of her father's arrest by an officer with a state regulatory agency.  *Id.* at 653.  The plaintiff began videotaping the arrest, and the officer grabbed the plaintiff's arm and told her to leave.  *Id.*  The plaintiff repeatedly asked the officer not to touch her, but the officer continued to hold her arm in a tight grip for a long period of time.  *Id.*  Additionally, the plaintiff alleged that the officer pushed her around the corner of a building and detained her. *Id.*  Based on these facts, the District of Delaware determined that there was a genuine issue of material fact regarding whether the plaintiff was "seized."  *Id.* at 656.

These cases are distinguishable from the instant matter.  In both cases, there was evidence that the officer exercised control over the plaintiff's body such that the plaintiff either succumbed to the force or was overpowered despite efforts to resist.  In contrast, Mr. Smith broke away from Sgt. Shipp's grip, and the incident did not escalate further.  Sgt. Shipp did not prevent Mr. Smith from leaving the area. Mr. Smith did not submit to Sgt. Shipp's show of authority.  Additionally, Sgt. Shipp's use of physical force was qualitatively different from the amount of force used in *Schall* and *Lloyd*.  In *Schall*, the officer held the maintenance worker in a headlock and placed a gun near his head.  *Schall*, 322 F. Supp. 2d at 598.  In *Lloyd*, the officer held the plaintiff's arm "in a tight, wrenching grip for a long period time." *Lloyd*, 53 F. Supp. 2d at 653.  By comparison, Sgt. Shipp grabbed Mr. Smith's arm and shoved him in an incident that "happened that quick" and then ended.  (Smith Dep. at 11 *ll*.20-21, 14 *l*.4.)  Therefore, even accepting Plaintiff's version of the facts, the court concludes that Sgt. Shipp did not "seize" Mr. Smith in violation of his Fourth Amendment rights.  *See Mendenhall*, 446 U.S. at 553-54 ("The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' ") (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).  Thus, the court will grant the Individual Defendants' motion for summary judgment on this issue.

### C.   <u>Excessive Force</u>

In the October 18, 2004 memorandum and order, the court construed Plaintiff's excessive force claims as being brought under both the Fourth and

Fourteenth Amendments.[10]  The court will analyze the Individual Defendants' arguments with respect to each of these claims in turn.

### 1.  **Fourth Amendment**

In order to make out a claim for excessive force under the Fourth Amendment, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999).  The court has concluded that there is no genuine issue that a "seizure" did not occur, *see supra* Part III.B.; therefore, Plaintiff fails to establish a claim for excessive force under the Fourth Amendment.  The court will grant the Individual Defendants summary judgment with respect to this issue.[11]

### 2.  **Fourteenth Amendment**

The substantive due process clause of the Fourteenth Amendment protects against arbitrary governmental action.  *County of Sacramento v. Lewis*, 523

---

[10]The Individual Defendants appear to argue that under *Graham v. Connor*, 490 U.S. 386 (1989), Plaintiff's excessive force claims should be examined under the Fourteenth Amendment and not the Fourth Amendment because the facts at hand do not involve an arrest or an investigatory stop.  This argument is a reversal from Defendants' argument in their motion to dismiss in which they urged the court to analyze Plaintiff's excessive force claims under the Fourth Amendment only.  Nonetheless, the Individual Defendants concede in their reply in support of their motion for summary judgment that "[t]he present case cannot be determined as a matter of law under *Graham* to fall within the contours of the Fourth Amendment alone." (Doc. 34, Reply Br. at 6.)  Because the court previously reached this same conclusion in its October 18, 2004 memorandum, the court will examine Plaintiff's excessive force claims under both the Fourth and Fourteenth Amendments.

[11]Assuming *arguendo* that Plaintiff had been "seized," the court would still conclude that the undisputed facts show that Sgt. Shipp's use of force was reasonable.  A claim for excessive force under the Fourth Amendment is analyzed under an objectively reasonable standard.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  The Supreme Court, however, has determined that " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'. . . violates the Fourth Amendment."  *Id*. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Given *Graham*'s reasoning, the court finds that even assuming Plaintiff had been "seized," Sgt. Shipp's actions were not unreasonable given the totality of the circumstances.  Sgt. Shipp admits that he used some degree of force, but when Mr. Smith resisted, Sgt. Shipp did not pursue the matter of Mr. Smith further.

U.S. 833, 845 (1998).  A substantive due process clause violation based on excessive force occurs when state conduct is properly characterized as conscience shocking. *Id*. at 847; *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001).  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento*, 523 U.S. at 849.  Conscience-shocking conduct involves "only the most egregious official conduct" that is "brutal," "offensive," and "intended to injure."  *Id*. at 846-47, 849.  The relevant inquiry is

> whether the force applied caused injuries so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Kurilla v. Callahan*, 68 F. Supp. 2d 556, 564 (M.D. Pa. 1999) (internal quotations omitted).

The Individual Defendants argue that Sgt. Shipp's conduct did not rise to the conscience-shocking level.  The court agrees.  Even accepting Plaintiff's version of the events as true, the court finds that Plaintiff has not presented sufficient evidence to demonstrate the existence of conscience-shocking conduct.  "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault . . . ." *County of Sacramento*, 523 U.S. at 848.  Thus, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with authority causes harm." *Id*.  Sgt. Shipp aggressively grabbed Mr. Smith's arm and told him to move on his way because he erroneously believed that Mr. Smith was not in the administrative office for any legitimate purpose.  Although the court does not condone such behavior, the court finds that a

22

reasonable fact-finder could not conclude that Sgt. Shipp's actions were brutal and inhumane. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (finding that one slap does not rise to the level of a constitutional violation even if made for no legitimate purpose). Granted, Mr. Smith sustained an injury as a result of the incident, but he concedes that his pain subsided after a steroid shot.[12]  (Smith Dep. at 30 *ll.*17-21.)  In short, "the Constitution does not guarantee due care on the part of state officials." *County of Sacramento*, 523 U.S. at 849.  Based on this reasoning, the court concludes that the Individual Defendants are entitled to judgment as a matter of law on this issue.[13]

### D.   Malicious Prosecution

Historically, the Third Circuit allowed malicious prosecution claims to proceed under § 1983 by merely alleging the common law elements of the tort. *Gallo v. City of Philadelphia*, 161 F.3d 217, 221 (3d Cir. 1998).  Those elements are (1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in the plaintiff's favor, (3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996).  The rationale was that

---

[12]Plaintiff alleges that he is no longer able to work because he is disabled as a result of the incident. The evidence shows, however, that Mr. Smith stopped working due to his psychological problems that stemmed from the alleged retaliation he suffered.  (*See* Ex. 3 in Supp. of Pl.'s Counterstatement of Material Facts.)

[13]Plaintiff misinterprets some of the court's reasoning in the October 18, 2004 memorandum and relies on his misinterpretation to support his arguments in opposition to the Individual Defendants' motion for summary judgment.  For instance, Plaintiff asserts that the court found in its October 18, 2004 memorandum that Sgt. Shipp's conduct was "unjustified and served no government interest."  (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 8.)  The court's reasoning did not go quite that far, nor could it.  In deciding Defendants' motion to dismiss, the court viewed the facts in Plaintiff's Amended Complaint as true.  Thus, the court noted that Plaintiff *alleged in his Amended Complaint* that Sgt. Shipp's conduct served no governmental interest.  Plaintiff's attempts to contort the court's reasoning in the October 18, 2004 memorandum will not be permitted.

proof of a violation of the common law tort for malicious prosecution was evidence of a substantive due process violation. *Id*. The Supreme Court, in *Albright v. Oliver*, 510 U.S. 266 (1994), held that malicious prosecution claims must be based on explicit constitutional text, "not the more generalized notion of substantive due process." *Id*. at 273 (internal quotations omitted). Following *Albright*, the Third Circuit noted that the Supreme Court's decision " 'cast[] doubt' on prior circuit precedent adopting common law malicious prosecution as the test in a § 1983 action." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (quoting *Gallo*, 161 F.3d at 221).

Relying on this language from *Merkle*, this court determined, in its October 18, 2004 memorandum, that the common law elements of a malicious prosecution claim no longer need to be proven to establish a claim for malicious prosecution under § 1983 as long as the § 1983 claim is based on " 'an explicit textual source of constitutional protection.' " *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In their motion for summary judgment, the Individual Defendants argue that recent Third Circuit caselaw indicates the common law elements of malicious prosecution do in fact have to be established. The Individual Defendants point out that since *Merkle*, the Third Circuit has examined the common law tort elements in conjunction with a specific constitutional provision. *See Dibella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005); *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (analyzing the four elements of common law malicious prosecution, but adding the additional element of "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding"). Thus, Third Circuit law regarding

constitutional malicious prosecution claims is not as clear as this court indicated in its October 18, 2004 memorandum.

Notwithstanding the issue of whether the common law elements of malicious prosecution must be established, one of the fundamental aspects of any malicious prosecution claim is the initiation of criminal proceedings. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 362 n.9 (D.N.J. 2000). The Individual Defendants contend that Plaintiff has not demonstrated that he was criminally prosecuted, much less that a criminal proceeding was ever initiated. Upon review of the record, the court finds that, resolving all factual disputes in Plaintiff's favor, Plaintiff has not established a genuine issue that he was criminally prosecuted.[14]

Sgt. Shipp raised allegations that Mr. Smith made false statements in his written complaint regarding the incident that occurred between the two men. (Defs.' Statement of Material Facts ¶ 24.) Director Shaffer conducted a predisciplinary conference on the matter. (*Id.*; Ex. G in Supp. of Defs.' Statement of Material Facts, Predisciplinary Conference Letter.) In the letter notifying Mr. Smith of the predisciplinary conference, Director Shaffer stated that the conference involved the "charge" of Providing False and Misleading Information. (Ex. G. in Supp. of Defs.'

---

[14]The court notes that the specific constitutional right violated as part of Plaintiff's alleged malicious prosecution is unclear in this case. Plaintiff did not indicate which constitutional right was implicated in his Amended Complaint. In the October 18, 2004 memorandum, the court interpreted Plaintiff's malicious prosecution claim as being based on First Amendment retaliation. In their summary judgment motion, the Individual Defendants analyze Plaintiff's constitutional malicious prosecution claim in the context of the Fourth Amendment, but note that their argument would apply with equal force to a claim based on the First Amendment. In his brief in opposition to the Individual Defendants' summary judgment motion, Plaintiff only refers to his malicious prosecution claim in the context of the First Amendment. Despite the lack of clarity on this issue, however, the court concludes that because Plaintiff has failed to establish that criminal proceedings were even initiated, whether he asserted his malicious prosecution claim under the First or Fourth Amendment is irrelevant.

Statement of Material Facts, Predisciplinary Conference Letter.)  Following the conference, Mr. Smith was advised that the allegations could not be supported.  (Ex. I in Supp. of Defs.' Statement of Material Facts, Shaffer Letter.)  Mr. Smith concedes that he was never disciplined and that he was not criminally prosecuted. (Smith Dep. at 46 *ll*.14-20, 57 *ll*.2-4.)

Based on these facts, the court finds that Plaintiff has not demonstrated sufficient evidence to show that he was criminally prosecuted.  Plaintiff's conduct was investigated within the Capitol Police, and he had a predisciplinary conference. Although the letter notifying Plaintiff of the predisciplinary conference stated that he was being investigated for the "charge" of Providing False and Misleading Information, the record is devoid of any indication that *criminal* charges were contemplated.[15]  The predisciplinary conference was conducted, and Plaintiff was cleared of any wrongdoing.  (Ex. I in Supp. of Defs.' Statement of Material Facts, Shaffer Letter.)  In fact, Plaintiff admits that he was not criminally prosecuted. (Smith Dep. at 46 *ll*.14-20.)  Because no criminal proceeding was brought against

---

[15]In his brief in opposition to the Individual Defendants' motion for summary judgment, Plaintiff argues that he was "told that if he did not recant his claim against Defendant Shipp, that he would be charged criminally for making the complaint and prosecuted."  (Br. in Opp'n to Mot. for Summ. J. at 15.)  Plaintiff, however, does not provide any citation to the record to support this allegation.  In his Counterstatement of Material Facts, Plaintiff argues that he was "prosecuted" and that he was advised that he would be charged criminally.  (*See* Pl.'s Counterstatement of Material Facts ¶ 28.)  The only support cited for this proposition, however, is the letter notifying him of his predisciplinary conference.  (*See* Ex. G in Supp. of Defs.' Statement of Material Facts, Predisciplinary Conference Letter.)  The court has noted, though, that this letter only pertains to the allegations that led to the predisciplinary conference.  Indeed, Plaintiff admits in his Counterstatement of Material Facts that no criminal complaints were ever filed against him.  (Pl.'s Counterstatement of Material Facts ¶ 28.)

Plaintiff, Plaintiff's constitutional malicious prosecution claim must fail as a matter of law.[16]

### E.   Unlawful Arrest

The Individual Defendants assert that Plaintiff's unlawful arrest claim must fail because Plaintiff was not arrested.  Plaintiff admits that he was not arrested. (Smith Dep. at 41 *ll*.16-17.)  Plaintiff offers no other response to the Individual Defendants' argument on this issue.  Thus, the court finds that no genuine issue exists as to Plaintiff's unlawful arrest claim and that the Individual Defendants are entitled to judgment as a matter of law.

### F.   First Amendment Retaliation

In evaluating a public employee's retaliation claim for engaging in protected First Amendment activity, the court must undergo a three-step process. *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001).  First, a plaintiff must show that his conduct was constitutionally protected and involved a matter of public concern.  *Id*. at 195.  Second, the plaintiff must show that his protected activity was a substantial or motivating factor in the alleged retaliatory action.  *Id*.  Third, the defendant can rebut the plaintiff's claim by demonstrating that it would have taken the same action even in the absence of the protected conduct.  *Id*.  While the first factor

---

[16]In so deciding, the court is persuaded by *Wyatt v. Keating*, 130 Fed. Appx. 511, 2005 WL 834462 (3d Cir. Apr. 12, 2005).  In this case, the Third Circuit held that a constitutional malicious use of process claim, which is the equivalent of a malicious prosecution claim for civil actions, was facially deficient because there was no "civil proceeding" against the plaintiff.  *Id*. at *4.  The Third Circuit found that the defendant had only initiated an internal investigatory process.  *Id*. at *5.

is a question of law, the second and third factors are questions of fact. *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004).

In the October 18, 2004 memorandum, the court determined that Plaintiff had sufficiently demonstrated that he spoke out on a matter of public concern. (Oct. 18, 2004 Mem. at 18.) In their motion for summary judgment, the Individual Defendants assert that Plaintiff has not established a genuine issue that the Individual Defendants engaged in retaliatory conduct. The court agrees.

" 'Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts.' " *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (internal quotation omitted) (emphasis omitted). A public employer engages in retaliatory conduct when "it refuses to rehire an employee because of the exercise of [the employee's First Amendment rights] or when it makes decisions, which relate to promotion, transfer, recall, and hiring, based on the exercise of an employee's First Amendment rights. *Id*. Retaliation does not occur, however, when the employer's actions constitute criticism, false accusations, or verbal reprimands. *Id*.

Although Plaintiff does not specify what acts he alleges to be retaliatory in his brief in opposition to the Individual Defendants' motion for summary judgment, upon review of the record, the court can discern the following alleged instances of retaliation: Plaintiff's transfer to a different shift, Director Shaffer's accusation that Plaintiff lied during his predisciplinary proceeding, Plaintiff's removal from his leadership roles in the Fraternal Order of Police, other officers putting

28

cheese in Plaintiff's mailbox and calling him a "snitch," and Plaintiff's alleged inability to pursue further complaints against Sgt. Shipp with Dianne McNeal and Mr. Hodge.[17]  None of these allegations, however, constitute retaliatory conduct.

Although a transfer would qualify, it is undisputed that Plaintiff requested the transfer.  (Pl.'s Counterstatement of Material Facts ¶ 38; Ex. L in Supp. of Defs.' Statement of Material Facts, Smith Email.)  Plaintiff took a $1.00 per hour pay cut when he switched shifts, but he requested the transfer.  Director Shaffer's accusation does not rise to the level of retaliation because false accusations have been deemed to be *de minimis* by the Third Circuit.  *See Brennan*, 350 F.3d at 419.  Plaintiff's allegations regarding the Fraternal Order of Police union president, harassment by other officers, and Ms. McNeal and Mr. Hodge's efforts to block Plaintiff's filing of written complaints are not actionable because they do not involve any of the named defendants and do not involve conduct that rises to the level of retaliation.[18]  *See id.* (finding that the named defendants could not be held responsible for conduct that was unattributable to them).  In short, Plaintiff has failed to establish that a genuine issue exists with respect to whether the Individual Defendants retaliated

_____

[17]Plaintiff apparently no longer works at the Capitol Police.  (*See* Ex. 3 in Supp. of Pl.'s Counterstatement of Material Facts, Yohn Letter.)  Although Plaintiff does not assert that he was terminated in retaliation for exercising his First Amendment rights, the court concludes that such an argument would fail because there is no temporal proximity between the protected activity, filing a written complaint against Sgt. Shipp on December 10, 2003, and the termination, which occurred almost a year and a half later in or around April 2005.  *See Hill v. City of Scranton*, __ F.3d __, 2005 WL 1355115, at *10 (3d Cir. June 9, 2005); *Taylor v. Proctor & Gamble Dover Wipes*, 184 F. Supp. 2d 402, 417-18 (D. Del. 2002).  The court has also considered whether Plaintiff's allegations could be construed to include a claim of constructive discharge. It appears that Plaintiff did not leave on his own volition, but assuming *arguendo* that he did, the court does not believe that Plaintiff has established that the work conditions were so intolerable that a reasonable person would have felt compelled to resign.  *See Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 578-79 (E.D. Pa. 2004).

[18]Plaintiff specifically testified that Sgt. Shipp and Directors Marzullo and Shaffer did not make harassing comments to him.  (*See* Smith Dep. at 78 *ll*.3-9.)

against him; therefore, the court will grant the Individual Defendants' motion for summary judgment on this issue.[19]

### G.    Failure to Train/Supervise

The Individual Defendants argue that Plaintiff's failure to train or supervise claim must fail because Plaintiff has not provided sufficient evidence to establish that the alleged failure to train or supervise reflected a policy or custom of deliberate indifference.  Specifically, the Individual Defendants contend that Plaintiff has not demonstrated a pattern of prior incidents in which Sgt. Shipp committed similar constitutional violations that would have led his supervisors to take corrective or preventative measures against the offending conduct.  Plaintiff counters that he has submitted a substantial amount of evidence, including two affidavits from Capitol Police officers, that shows that Sgt. Shipp had a well-known anger management problem.

Although the court is not convinced that Plaintiff has established "a pattern of prior incidents of similar violations of *constitutional* rights," *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (emphasis added), the court finds that Plaintiff's failure to train or supervise claim must fail as a matter of law for two other reasons.  First, because Plaintiff has not established an underlying constitutional violation, his failure to train or supervise claim cannot stand.  *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 n.8 (1989) and *Collins v. City of Harker Heights*, 503 U.S. 115,

---

[19]In *Brennan*, the Third Circuit noted that conduct that is *de minimis* by itself could be retaliatory if it was part of a continuing course of conduct.  *Brennan*, 350 F.3d at 419 n.16.  The alleged retaliatory conduct attributable to the Individual Defendants is insufficient to establish a continuing course of conduct in this case.

123-24 (1992)); *Opoku v. City of Philadelphia*, 152 F. Supp. 2d 809, 813 (E.D. Pa. 2001). Second, as the Individual Defendants correctly argue in their reply brief, failure-to-train liability only extends to municipalities. *See City of Canton*, 489 U.S. at 380. In *City of Canton*, the landmark case for establishing failure-to-train liability, the Supreme Court addressed whether "a *municipality* can ever be liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees." *Id*. The court is unable to find any case that extends failure-to-train claims further. For these reasons, the court finds that the Individual Defendants are entitled to judgment as a matter of law on Plaintiff's failure to train or supervise claim.

### H.   Plaintiff's State-Law Claims

The Individual Defendants urge the court to decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims of assault, battery, false arrest, malicious prosecution, and intentional infliction of emotional distress against Sgt. Shipp. The court will dismiss Plaintiff's state-law claims, but for different reasons. In their motion to dismiss, Defendants argued that Plaintiff's state-law claims were barred by the doctrine of sovereign immunity. In its October 18, 2004 memorandum, the court incorrectly construed Defendants' argument as being brought under governmental immunity. (*See* Oct. 18, 2004 Mem. at 20-21.) In doing so, the court concluded that a government employee was not entitled to governmental immunity when his or her actions amounted to willful misconduct. (*Id*. at 21.) Governmental immunity, however, applies to local agencies whereas sovereign immunity applies to Commonwealth defendants. *Simko v. County of Allegheny*, 869 A.2d 571, 573 (Pa. Commw. Ct. 2005). Plaintiff's state-law claims involve an employee of the Commonwealth; therefore, the court should have applied the law of

state sovereign immunity.  Because this issue involves the court's jurisdiction over the state-law claims, the court will examine the effect of Pennsylvania's sovereign immunity law on Plaintiff's state-law claims here.

Under Pennsylvania law, the Commonwealth and its officials acting within the scope of their duties "enjoy sovereign immunity" and are "immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. Cons. Stat. Ann. § 2310 (West Supp. 2005).  The Pennsylvania legislature has waived the Commonwealth's sovereign immunity in nine categories: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  42 Pa. Cons. Stat. Ann. § 8522(b) (1998).

In light of Pennsylvania law on sovereign immunity, the court concludes that Plaintiff's state-law claims must be dismissed.  Pennsylvania has not waived its immunity for intentional torts.  *See LaFrankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992).  Additionally, Sgt. Shipp is covered by Pennsylvania's sovereign immunity statute because he was acting within the scope of his employment at the time of the incident.  In fact, Plaintiff alleged in his Amended Complaint that "[a]t the time of the events which give rise to this complaint, Sergeant Shipp was . . . on-duty and acting within the scope of his employment for the Police Department."  (Am. Compl. ¶ 9.)  In short, the court finds that Plaintiff's state-law claims are barred by the doctrine of sovereign immunity.

Plaintiff argues that *Heinly v. Commonwealth*, 621 A.2d 1212 (Pa. Commw. Ct. 1993) stands for the proposition that state sovereign immunity would not apply in this case. The Pennsylvania Commonwealth Court's decision in *Heinly*, however, is distinguishable because it examined whether state sovereign immunity applied to § 1983 claims as opposed to state-law claims, which are the focus here.

The only other relevant consideration regarding the applicability of sovereign immunity in this case is whether sovereign immunity was waived when the case was removed to federal court. The controlling case on this issue is *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002). In *Lapides*, the Supreme Court held that the state waived its Eleventh Amendment immunity when it voluntarily invoked the jurisdiction of a federal court through removal. *Id*. at 617, 624. The Supreme Court, however, limited its decision to state-law claims against the state in which the state had explicitly waived immunity from suit. *Id*. at 617. In the instant matter, Pennsylvania has not waived its immunity from suit on the state-law claims it removed to federal court. Thus, this court concludes that Sgt. Shipp's immunity from suit remains intact despite the removal of this case to federal court. *See Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2005) (holding that a state does not waive its sovereign immunity by voluntarily removing an action to federal court when it would have been immune from the state-law claims in state court).

## IV.         <u>Conclusion</u>

In accordance with the foregoing discussion, the court will grant the Individual Defendants' motion for summary judgment.  An appropriate order will issue.


s/Sylvia H. Rambo

SYLVIA H. RAMBO
United States District Judge

Dated:  July 1, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **KENT SMITH,** | : | **CIVIL NO. 1:04-CV-0997** |
| **Plaintiff** | : |  |
| **v.** | : |  |
| **DEPARTMENT OF GENERAL SERVICES; PENNSYLVANIA CAPITOL POLICE BUREAU, a/k/a CAPITOL POLICE DEPARTMENT AT HARRISBURG; EUGENE V. MARZULLO, Chief Of Police; RICHARD SHAFFER; and SERGEANT MICHAEL SHIPP, individually and in his capacity as a Capitol Police Officer,** | : |  |
| **Defendants** | : |  |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

      1) Defendants Ship, Marzullo, and Shaffer's motion for summary judgment (Doc. 23) is **GRANTED**.

      2) The Clerk of Court shall enter judgment in favor of Defendants and against Plaintiff.

      3) The Clerk of Court shall close the case file.

    s/Sylvia H. Rambo    
SYLVIA H. RAMBO
United States District Judge

Dated:  July 1, 2005.